UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
BEST PAYPHONES, INC.,                             :
                                                  :
                   Plaintiff,                  :
                                                  :           **<u>ORDER</u>**
      -against-                                :           1-CV-3924 (JG) (VMS)
                                                  :           1-CV-8506 (JG) (VMS)
THE CITY OF NEW YORK, DEBRA                       :           3-CV-0192 (JG) (VMS)
SAMUELSON, AGOSTINO CANGEMI,                      :
STANLEY SHOR, BRUCE REGAL, ELAINE                 :
REISS, LAWRENCE ALLISON, GINO                     :
MENCHINI, and ALLAN DOBRIN,                       :
                                                  :
                   Defendants.                 :
------------------------------------------------------------ x

**Scanlon, Vera M., United States Magistrate Judge:**

      Plaintiff Best Payphones, Inc. ("Plaintiff") brings this action against Defendants the City of New York, Debra Samuelson, Agostino Cangemi, Stanley Shor, Bruce Regal, Elaine Reiss, Lawrence Allison, Gino Menchini and Allan Dobrin (collectively "Defendants"), alleging that Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 when Defendants, in their administration of a regulatory framework requiring franchises and permits to operate public pay telephones ("PPTs") on public rights-of-way, retaliated and discriminated against Plaintiff. See generally Third Amended Compl.; ECF No. 261. Plaintiff demands compensatory damages against Defendants for the alleged loss of business, loss of asset value, loss of business opportunities and costs of litigation and punitive damages for violating its rights under color of state law and local law. Id. ¶ (n).

      Before this Court is Defendants' motion for discovery sanctions due to Plaintiff's alleged spoliation of evidence, which Plaintiff opposes. See generally Defendants' Motion for Discovery Sanctions ("Defs.' Mot."), ECF No. 447; Plaintiff's Opposition attached as Exhibit 11

to Defs.' Mot (Pl.'s Opp'n).  For the foregoing reasons, Defendants' spoliation motion is denied except to the extent that Defendants are awarded reasonable attorneys' fees and costs incurred in connection with the motion.

I.   **Background**

The Court assumes familiarity with this case.  A detailed recitation of the facts and procedural posture of the case is described in the Court's previous Report and Recommendations ("R&R") on Plaintiff's motion to amend its Third Amended Complaint.  See R&R, ECF No. 417.  Since the issuance of the Court's R&R, Plaintiff's motion to amend its Third Amended Complaint was denied by the District Judge when he adopted the R&R, and this Court separately denied Plaintiff's motion for reconsideration of the R&R.  See generally 9/18/2015 Order Adopting R&R; Order on Mot. for Reconsideration, ECF No. 448.  The parties also submitted a letter certifying that discovery was complete, subject to the outcome of this spoliation motion.  Letter, ECF No. 452.  The parties are presently briefing a summary judgment motion, which is to be submitted to the Court by April 28, 2016.

Defendants filed this spoliation motion asserting that Plaintiff failed in its obligation to preserve relevant evidence, an obligation that Defendants' argue arose when Plaintiff commenced related litigation against Defendants in New York State Supreme Court on July 11, 2000. Defs.' Mot. at 1-2, 6.  Specifically, Defendants seek, but did not receive from Plaintiff: emails between Plaintiff and third parties, particularly those third parties that allegedly sought to buy Plaintiff's business; revenue information including daily activity reports from each payphone and missing bank statements; and contracts and agreements between Plaintiff and various service providers.  Id. at 2, 4.  Defendants argue that this evidence is necessary to defend against Plaintiff's damages claim by reasonably assessing the value of Plaintiff's business at

2

various points in time and by "ascertain[ing] the basis for the purchase prices offered by prospective buyers of [Plaintiff's] business." Id. at 11. Without these documents, Defendants contend that they "are greatly hampered from showing that [Plaintiff] was not damaged by [Defendants'] acts or omissions, but instead, it was [P]laintiff's business practices that led to the decline in the value of its PPT business and its persistent inability to find a suitable buyer of its assets." Id. Defendants request that the Court order sanctions including: precluding Plaintiff "from offering any evidence as to the value of its business or its monetary losses or contesting [D]efendants' contention that any such monetary losses stemmed from [P]laintiff's own business conduct"; an "adverse inference instruction directing the jury to presume that the lost emails and revenue data were both relevant and favorable to the [D]efendants' claim that the value of [Plaintiff's] phones declined as a result of [P]laintiff's own actions and business practices"; "striking [ ] [P]laintiff's [Fed. R. Civ. P.] 26(a)(1) calculation of damages for 'loss related to closing price'"; precluding Plaintiff from offering any evidence or testimony to support such a damage calculation; and/or awarding monetary fines. Id. at 11-12.

In support of their allegations, Defendants contend that: (1) "Plaintiff never instituted a litigation hold or instructed Plaintiff's principal, Mr. Michael Chaite, to save his email communications or . . . any other relevant records," id. at 6; (2) "Mr. Chaite's assertion that he was not using email to communicate with [ ] [D]efendants, [his] counsel, or anyone else from 1998-2004 is belied by" Plaintiff's production, which included emails between Plaintiff and its attorneys and the Department of Information Technology and Telecommunications ("DoITT"), id. at 6-7; Mr. Chaite testified that Plaintiff received daily activity reports of the revenue generated by each of its PPTs, which were not included in Plaintiff's production, id. at 7-8; (3) Plaintiff, while producing pages from its check registry, failed to produce any document that

3

provides definitions for the ledger codes, id. at 8; and (4) Plaintiff did not provide its contracts with its service providers, id. at 8-9.

According to Plaintiff, Plaintiff has provided Defendant copies of all contracts and agreements between Plaintiff and its service providers, which Plaintiff indicates were publicly available due to Plaintiff's bankruptcy case. Pl.'s Opp'n at 16. Plaintiff also provided Defendants with the key for its check registry codes. Decl. of Michael Chaite in Opp'n ("Chaite Decl.") attached as Exhibit 12 to Defs.' Mot. ¶ 17. Plaintiff, in its opposition to Defendants' motion, argues that: (1) the litigation hold requirement was not established through case law until mid-2004, id. at 6; (2) "Defendants have not demonstrated that Plaintiff did not act reasonably . . . with respect to the preservation of electronic information . . . or that the acts Plaintiff did take were not reasonable," id. at 7; (3) "Defendants speculate there were emails between Plaintiff and would-be buyers but they offer nothing to support a conclusion that relevant information was contained in the emails," id. at 8; (4) Defendants could have sought the documents from third parties but did not, id. at 8-9; (5) Defendants did not act with a culpable state of mind; id. at 10; (6) the missing documents are not relevant to proving Defendants' case because Plaintiff produced complete copies of its tax returns and monthly bank statements, many of its monthly telephone bills, its check registry, and signed letters of intent for the purchase of Plaintiff's PPTs, which go to the value of Plaintiff's PPTs, and Defendants have not explained why these documents are insufficient, id. at 12-13; (7) "virtually all of the value [of Plaintiff's PPTs i]s attributable to potential advertising revenue," rather than based on revenue from PPT use, id. at 12; (7) Defendants' allegations are "not supported by any witness with knowledge concerning the valuation of businesses," id.; (9) the daily activity reports were only used to determine "whether phones were working and . . . were not an accurate means of tracking revenue," id. at

4

14; (10) Defendants have not shown that Plaintiff was under any obligation to retain the documents, id. at 15; (11) Defendants failed to question Mr. Chaite about the transactions in his bank statements at his deposition, id.; (12) the information in Plaintiff's check registry is irrelevant as prospective buyers were not concerned with Plaintiff's overhead and operation costs would have been absorbed into the prospective buyer's business, id. at 15; (13) Defendants have not shown that Plaintiff was deliberately or grossly negligent, therefore, an adverse inference jury instruction is not warranted, id. at 17-19; and (14) Defendants have not suffered any demonstrable prejudice in light of the documents they have received, id. at 20.

In their reply, Defendants argue that: (1) Mr. Chaite admitted in his declaration in opposition to Defendants' motion that he was instructed by his attorney to preserve relevant records, yet Plaintiff's counsel took no steps to ensure that Mr. Chaite complied with this instruction, Defendants' Mem. of Law in Reply to Pl.'s Opp'n ("Defs.' Reply") attached as Exhibit 16 to Defs.' Mem. at 3-4, Chaite Decl. ¶ 24; (2) the evidence was relevant and in particular, the activity reports would be useful to determine how many PPTs were working when Plaintiff decided to sell its business, Defs.' Reply at 4-5; and (3) Mr. Chaite admitted that he did not take steps to preserve the daily activity reports and, therefore, Plaintiff's actions were willful and should be considered grossly negligent, id. at 5, Chaite Decl. ¶ 10.[1]

---

[1] Defendants also ask the Court to preclude Plaintiff from relying on claims in the Chaite Declaration in the future because it is self-serving post-discovery testimony. Defs.' Reply at 6-7. Defendants also claim that Plaintiff overtly violated Fed. R. Civ. P. 26(e)(1)(A), which required Plaintiff to correct its disclosures and responses upon learning they were incomplete and incorrect, when Mr. Chaite did not tell Defendants after his deposition that he knew how to read the ledger codes in the check registry, nor when he remembered that Plaintiff did not have a written contract with its dial tone provider for the final two years Plaintiff operated its PPTs. Id. (citing Fed. R. Civ. P. Rule 26, Chaite Decl. ¶¶ 17, 19). Defendants do not request any additional sanctions based on these allegations, but only that the Court award the relief requested in its original motion. Defs.' Reply at 8. At this time, the Court will not preclude Plaintiff from using Mr. Chaite's Declaration in the future. Mr. Chaite's Declaration was offered in response to

## II. Analysis

### a. The Law Of Spoliation

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). A party seeking sanctions for spoliation, including an adverse inference jury instruction, "must establish '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" Coale v. Metro-N. Commuter R. Co., 621 F. App'x 13, 16 (2d Cir. 2015) (quoting Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)). As of December 1, 2015, the new Fed. R. Civ. P. 37(e) governs a party's failure to preserve electronically stored information.[2] Thus as the law currently

---

Defendants' spoliation motion. If Plaintiff relies on the declaration in the future, then the Court will determine at that time if the reliance is appropriate and sufficiently supported by the record to be considered by the Court.

[2] In his order transmitting the proposed rules amendments to Congress, Chief Justice of the Supreme Court of the United States John G. Roberts stated that "'the foregoing amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 2015, and shall govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings then pending.'" CAT3, LLC v. Black Lineage, Inc., 14 Civ. 5511 (AT) (JCF), 2016 WL 154116, at *5 (S.D.N.Y. Jan. 12, 2016) (quoting 2015 U.S. Order 0017). Chief Justice Roberts' order is consistent with 28 U.S.C. § 2074(a), which permits the Supreme Court to apply new rules to pending proceedings, "except . . . to the extent that, in the opinion of the court in which such proceedings are pending, the application of such rule in such proceedings would not be feasible or would work injustice, in which event the former rule applies." 28 U.S.C. § 2074(a); see CAT3, 2016 WL 154116, at *5. As the application of the new rule does not create issues of feasibility or injustice, the Court will apply the new rule with respect to the electronic evidence at issue here.

exists in the Second Circuit, there are separate legal analyses governing the spoliation of tangible evidence versus electronic evidence. When applicable, the differences in the legal analyses are discussed infra.

After reviewing the parties' arguments and the relevant case law, and considering the evidence that Defendants contend that they need to defend themselves in this action, the Court holds that Plaintiff was under a duty to preserve the evidence and that Plaintiff acted negligently in failing to preserve the evidence, but Defendant was not prejudiced by the destruction of the evidence. Therefore, the Court denies Defendants' requests to preclude Plaintiff from proving its damages case against Defendants and for an adverse inference jury instruction. Yet, the Court finds that Plaintiff is responsible for Defendants' attorneys' fees attach incurred in bringing this spoliation motion.

### i. The Duty to Preserve

"The duty to preserve evidence 'arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to

---

Rule 37(e) is as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>   (A) presume that the lost information was unfavorable to the party;
>   (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

future litigation.'" Field Day, LLC v. City of Suffolk, 04 Civ. 2202, 2010 WL 1286622, at *3 (E.D.N.Y. Mar. 25, 2010) (quoting Fujitsu Ltd. v. Fed'l Express Corp., 247 F.3d 423, 436 (2d Cir. 2001)). Although it is now well-established that "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents," Zubulake v. UBS Warburg LLC ("Zubulake IV"), 220 F.R.D. 212, 218 (S.D.N.Y. 2003), the duty to preserve existed well before the litigation hold requirement was developed through the Second Circuit's jurisprudence, see Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107-08 (2d Cir. 2001) (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)). At the time that Plaintiff filed its first lawsuit in this Court in 2001 (and the State Court action in 2000), the Second Circuit had previously held that the duty to preserve "arises when the party has notice that the evidence is relevant to litigation—most commonly when [a] suit has already been filed, . . . but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." Kronisch, 150 F.3d at 126.

The Court finds unavailing any arguments that Plaintiff made in its opposition papers that it was under no obligation to preserve the evidence because the concept of a "litigation hold" was not developed in this Circuit until 2004. As discussed above, the duty to preserve was well-developed in this Court's jurisprudence years before Plaintiff filed its lawsuit. At the latest, Plaintiff had an obligation to preserve all relevant evidence once it commenced its first action against Defendants on July 11, 2000 before the New York State Supreme Court because at that time, it was evident that there would be significant litigation until a complete resolution of the PPT franchise issues was achieved. Plaintiff, who brought the action against Defendants, had knowledge of both the timing of the lawsuit and the allegations it would be making against

8

Defendants, and Plaintiff had a duty to preserve all relevant evidence once it decided it was going to bring an action against Defendants. Thus, Plaintiff was under an obligation to preserve the destroyed evidence.

### ii. Culpable State of Mind

"Even where the preservation obligation has been breached, sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind." Estate of Jackson v. Cty. of Suffolk, 12 Civ. 1455 (JFB) (AKT), 2014 WL 1342957, at *11 (E.D.N.Y. Mar. 31, 2014), adopted by 12 Civ. 1455 (JFB) (AKT), 2014 WL 3513403 (E.D.N.Y. July 15, 2014) (internal quotation omitted). "In determining culpability, a case-by-case approach is preferable because failures to produce or preserve can occur 'along a continuum of fault— ranging from the innocence through the degrees of negligence to intentionality.'" Wandering Dago Inc. v. New York State Office of Gen. Servs., 13 Civ. 1053 (MAD), 2015 WL 3453321, at *11 (N.D.N.Y. May 29, 2015) (quoting Residential Funding Corp., 306 F.3d at 108). "The degree of the culpability bears on the severity of sanctions." Field Day, 2010 WL 1286622, at *3 (citing De Espana v. Am. Bureau of Shipping, 03 Civ. 3573 (LTS) (RLE), 2007 WL 1686327, at *1 (S.D.N.Y. June 6, 2007), adopted by Reino de Espana v. Am. Bureau of Shipping, Inc., 03 Civ. 3573 (LTS) (RLE), 2008 WL 3851957 (S.D.N.Y. Aug. 18, 2008)). As noted supra, the new Rule 37(e) requires separate analyses for tangible evidence and electronic evidence. Here, it requires the Court to analyze separately Plaintiff's culpability.

As to tangible evidence, in the Second Circuit, "the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly [or grossly negligently], even if without intent to breach a duty to preserve it, or negligently.'" Residential Funding, 306 F.3d at 108, 110 (quoting Byrnie, 243 F.3d at 109) (internal alterations & emphasis omitted). "Courts

9

in this circuit have found that the 'failure to preserve evidence resulting in the loss or destruction of relevant information is surely negligent, and, depending on the circumstances, may be grossly negligent.'" F.D.I.C. v. Horn, 12 Civ. 5958 (DRH) (AKT), 2015 WL 1529824, at *10 (E.D.N.Y. Mar. 31, 2015) (quoting Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010), abrogated on other grounds by Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135 (2d Cir. 2012)). "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." In re Pfizer Secs. Litig., 288 F.R.D. 297, 314 (S.D.N.Y. 2013) (internal quotations omitted). "Gross negligence has been described as a failure to exercise even that care which a careless person would use." Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman, 13 Civ. 5475 (JS) (AKT), 2015 WL 5027899, at *9 (E.D.N.Y. Aug. 25, 2015), adopted by 13 Civ. 5475 (JS) (ARL), 2016 WL 128154 (E.D.N.Y. Jan. 12, 2016) (internal quotation omitted).

As to electronic evidence, the Advisory Committee, when it adopted the new version of Rule 37(e), specifically rejected the giving of adverse inference instructions on a finding of negligence or gross negligence, as the Second Circuit had permitted in Residential Funding. See Fed R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Now, under Rule 37(e) (and as applied to electronic evidence only), a Court may not issue an adverse inference instruction unless the Court finds "that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Therefore, the Court may issue an adverse inference instruction with regard to the tangible evidence (i.e. the bank statements and daily activity reports) on a finding that Plaintiff acted negligently, but may not issue an adverse inference with regard to the electronic evidence (i.e. the emails) unless the Court finds that

10

Plaintiff acted with intent to deprive Defendants of that information. Additionally, Rule 37(e) only permits a Court to order curative measures or sanctions if information is lost "because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Thus, the Court may only order sanctions with respect to the lost emails if the Court finds that Plaintiff failed to take reasonable steps to preserve the evidence, and it cannot be restored or replaced through additional discovery.

Defendants argue that Plaintiff's actions were willful and grossly negligent. The Court disagrees and finds the record lacks significant evidence that Plaintiff acted with the willfulness or with the carelessness required to sustain a finding of gross negligence. In response to the spoliation motion, Plaintiff supplemented its production with the missing service provider contracts, which, as Plaintiff noted, were publicly available online as part of Plaintiff's bankruptcy proceeding. Plaintiff also provided Defendants with a key to the check registry codes. Chaite Decl. ¶ 17. Thus, Plaintiff did not act willfully or grossly negligently in failing to produce this evidence. Plaintiff also rightly argues that many of the documents that Defendants seek – such as the emails from prospective buyers and the bank statements – could have been requested from third parties, but were not. Although this might have significantly increased Defendants' discovery burdens, Defendants cannot properly complain that the documents, such as agreements or negotiations with third parties, are not available when Defendants have not shown that they sought these documents from non-parties. Likewise, Mr. Chaite could have been asked questions at his deposition about the various transactions in his bank statements and the illegible pages of the check registry, but it appears that Defendants did not explore these issues thoroughly. Chaite Decl. ¶¶ 4, 14-15.

Furthermore, as Mr. Chaite states in his declaration and as Defendants fail to rebut, Mr.

Chaite believed he was satisfying his burden to retain all relevant records and was not acting willfully in his failure to preserve the evidence. Chaite Decl. ¶ 24. As to the emails, which are governed under Rule 37(e), at the time in issue, preservation standards and practices for email retention were in flux, as described in Field Day, LLC v. Cty. of Suffolk, 2010 WL 1286622, at *13 ("[i]n determining state of mind, it is important to note that while the duty to preserve evidence existed long before the events at issue, the law with respect to litigation holds and the preservation of electronically stored information was not in 2003 and 2004 developed to the extent that it is today"). For example, Mr. Chaite labored under the mistaken belief that by keeping his emails as "new," he was saving them, and he thought it was enough to satisfy his burden. Chaite Decl. ¶ 24. Therefore, the Court cannot find that Mr. Chaite acted unreasonably as is required for the Court to issue sanctions under Rule 37(e). Furthermore, as discussed above, Defendants did not attempt to retrieve copies of the emails, or the information that was in the emails, from the alleged non-party prospective buyers, which would have cured any violation under Rule 37(e). As to the daily activity reports, Mr. Chaite described, at his deposition and in his declaration, their many inaccuracies and why they were insufficient to track the revenue from the PPTs, and thus why he did not believe they were relevant evidence as they could not be used for evaluating how much Plaintiff's business was worth. Id. ¶¶10-12. Mr. Chaite describes how the computer that tracked the data often had to be reset, which would inaccurately cause a PPT's cashbox reading to go to zero. Id. Therefore, according to Mr. Chaite, although the reports were used to determine whether a PPT was operating properly, they were inaccurate for determining revenue. Id. The prospective buyers of Plaintiff's business also did not receive them when they were evaluating Plaintiff's business. Id.

    The record as to Plaintiff's conduct does not support a finding that it acted willfully or

grossly negligently. For these reasons, the Court finds that Plaintiff's conduct amounted to mere negligence, and as discussed below, Defendants' requests for relief are limited based on this finding.

### iii. Relevance and Prejudice

"'[W]hen the destruction is negligent, relevance must be proven by the party seeking the sanctions.'" Deanda v. Hicks, 13 Civ. 1203 (KMK), 2015 WL 5730345, at *6 (S.D.N.Y. Sept. 30, 2015) (quoting Crawford v. City of New London, 11 Civ. 1371, 2014 WL 2168430, at *4 (D. Conn. May 23, 2014). The Second Circuit has made "clear that relevant in th[e context of a spoliation motion] means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." Residential Funding Corp., 306 F.3d at 108-09 (internal quotations omitted).

> It is not enough for the innocent party to show that the destroyed evidence would have been responsive to a document request. The innocent party must also show that the evidence would have been helpful in proving its claims or defenses – i.e. that the innocent party is prejudiced without that evidence. Proof of relevance does not necessarily equal proof of prejudice.

Pension Comm., 685 F. Supp. 2d at 467. "No matter what level of culpability is found, . . . the spoliating party should have the opportunity to demonstrate that the innocent party has not been prejudiced by the absence of the missing information." Id. at 468. "[T]he absence of prejudice can be shown by demonstrating . . . that the other parties were able to obtain the same evidence from another source," R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 25 (S.D.N.Y. 2010), adopted by R.F.M.A.S., Inc. v. So, 271 F.R.D. 55 (S.D.N.Y. 2010), or that the "evidence would not support the innocent party's claims or defenses," Pension Comm., 685 F. Supp. 2d at 469. See Ruzhinskaya v. HealthPort Techs., LLC, 14 Civ. 2921 (PAE), 2015 WL 7308662, at *5 (S.D.N.Y. Nov. 19, 2015) ("The Court accordingly rejects [the defendant's] bid for an adverse

inference instruction, because the records that [were] spoliated are, ultimately, immaterial to this litigation"); In re Pfizer Inc. Secs. Litig., 288 F.R.D. at 325 (no prejudice demonstrated where scientific study sought was similar to studies that had already been produced). The new Rule 37(e) addresses the issue of prejudice in relation to electronic evidence. Under Rule 37(e)(1), the Court "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

After a review of the evidence provided about the missing documents, the Court finds that although the evidence at issue was relevant, Defendants have not shown that they are prejudiced by its destruction, and therefore, there has been no spoliation under Second Circuit case law or under Rule 37(e).

### 1. Emails Between Plaintiff and Prospective Buyers

Plaintiff denies that there were any emails between Mr. Chaite and prospective buyers. Defendants disagree, pointing to emails among Mr. Chaite, his attorneys and the DoITT as evidence that Mr. Chaite was using email to communicate during the applicable time period. The Court finds that Defendants have not shown prejudice from the loss of any emails that may have existed between Plaintiff and potential buyers; therefore, no sanctions may be awarded under Rule 37(e).

Defendants have not shown that the emails contained substantive information as to the valuation of Plaintiff's business. Rather, the emails are not the important part of the record, but instead, it would have been the documents sent to the prospective buyers (possibly as attachments) that the buyers would have used to evaluate Plaintiff's business. Plaintiff has stated that it gave prospective buyers its tax returns, bank statements and telephone bills to help value its business, which have been provided to Defendants. Chaite Decl. ¶ 6. Defendants could also

14

have taken the additional steps, but did not, of contacting the prospective buyers to determine which documents Plaintiff had sent them and also the information that they relied upon in making their offers to purchase Plaintiff's business. The record does not reflect that Defendants deposed any of the principals in companies that might have bought Plaintiff's business or inquired of Plaintiff's competitors. This is noteworthy in this case because much of the value of Plaintiff's business is controlled by Defendants own regulatory process, which allocates franchises and controls the locations of PPTs, such that Defendants are well aware of the players in this market, who must engage with Defendants as to their franchises. Moreover, there has been intermittent litigation about the PPT process by other parties, such that Defendants, who control the process, would reasonably be expected to know the key market participants. See, e.g., Coastal Commc'n Serv., Inc. v. City of New York, 658 F. Supp. 2d 425 (E.D.N.Y. 2009); Glob. Network Commc'ns, Inc. v. City of New York, 507 F. Supp. 2d 365, 367 (S.D.N.Y. 2007) aff'd, 562 F.3d 145 (2d Cir. 2009); Coastal Commc'n Serv., Inc. v. New York City Dep't of Info. Tech. & Telecommc'ns, 824 N.Y.S.2d 761 (N.Y. Sup. Ct. 2006), aff'd, 44 A.D.3d 309 (1st Dept. 2007). Defendants' decision not to pursue obvious non-party discovery leads is not a reason to grant the serious spoliation sanctions requested.

Defendants have received Plaintiff's bank statements, tax returns, check registry, service provider contracts and offers of purchase. To the extent Plaintiff can carry its burden of proof as to damages, the evidence provided is sufficient for Defendants to cross-examine Plaintiff's witnesses on the question of damages, particularly causation (e.g., did Defendant's regulatory conduct adversely affect Plaintiff's value or was Plaintiff's business underperforming because of Plaintiff's business decisions and practices?).

15

### 2. Daily Activity Reports

The Court discussed the daily activity reports above and reiterates its same findings here. Defendants have not shown how they are prejudiced by not receiving these reports, as Mr. Chaite testified about their inaccuracies in determining revenue at his deposition and made the same statements in his declaration in opposition. Defendants have not sufficiently described why the daily reports are more accurate in valuing Plaintiff's business than by simply looking at Plaintiff's revenue streams. Defendants argue that the daily reports are necessary to determine the number of PPTs that were actually working during the applicable time period in order to argue that Plaintiff's poor business practices caused the devaluation of Plaintiff's business and not Defendants' acts. In contrast, Plaintiff claims, and Defendants do not refute, that much of the value of Plaintiff's business was the advertising revenue Plaintiff received from advertisements on its PPTs. This revenue would also not be reflected in the activity reports.

Defendants have not shown that the mutual lack of access to the daily activity reports is prejudicial to their defense. Defendants do not need the missing activity reports in order to argue about Plaintiff's poor business practices, and thus Defendants have not shown prejudice. It may, in fact, be that Plaintiff cannot offer sufficient evidence to substantiate that daily activity of the phones did, and would have, continued to generate income, which would be one stream of income undergirding Plaintiff's damages claim. Given Defendants' key role in the control of the PPT market and the participation of other franchisees in the PPT market, which would generate data by which market revenue estimates could be generated, Defendants have access to sufficient data from either their own records or non-party discovery to mitigate any limitations on their defense such that the Court cannot find prejudice caused by Plaintiff's inability to produce the requested records.

Defendants can argue at trial about the sufficiency and weight of the evidence presented in regard to the value of Plaintiff's business.

### 3. Bank Statements

Plaintiff has stated that it provided Defendants with all bank statements in the applicable time period. As the Court discussed above, Defendants could have asked Plaintiff at his deposition to decipher the bank statements if Defendants could not follow or interpret the transactions. This is another example of where Defendants failed to obtain the evidence from an available non-party as Defendants could easily have subpoenaed the bank records from Plaintiff's banks. Defendants have not shown prejudice by any missing bank statements.

As Plaintiff has acted with mere negligence, and Defendants have failed to show that they are prejudiced by the missing evidence, the Court declines to grant Defendants' requested relief, except as noted below.

### b. Defendants' Attorneys' Fees

Defendants request attorneys' fees for this motion. Under Rule 37(a)(5)(A), when a party provides discovery in response to a motion made pursuant to Rule 37, the Court may "require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). The Court has discretion to award attorneys' fees and costs in connection with spoliation motions "'to punish the offending party for its actions and deter the litigant's conduct, sending the message that egregious conduct will not be tolerated,'" Field Day, 2010 WL 1286622, at *14 (quoting Richard Green (Fine Paintings) v. McClendon, 262 F.R.D. 284, 292 (S.D.N.Y. 2009)), and awards them to Defendants here. See Matteo v. Kohl's Dep't Stores, Inc., 533 F. App'x 1, 3 (2d Cir. 2013) (affirming district court's

decision to award $10,686.60 in attorneys' fees in connection with a spoliation motion); Skyline Steel, LLC v. PilePro, LLC, 13 Civ. 8171 (JMF), 2015 WL 3739276, at *8 (S.D.N.Y. June 15, 2015) (awarding $103,818.23 in attorneys' fees in connection with spoliation motion that was only partially successful); Field Day, LLC v. Cty. of Suffolk, 04 Civ. 2202, 2010 WL 5490990, at *1 (E.D.N.Y. Dec. 30, 2010) (awarding $97,659.51 in attorneys' fees in case where it was unclear that plaintiffs suffered any prejudice as a result of spoliation so that sanctions in the form of an adverse inference, the striking of pleadings or orders of preclusion were inappropriate, but an award of monetary sanctions for the amount of reasonable attorneys' fees and costs incurred in connection with the motion was warranted).

As in response to Defendants' motion Plaintiff turned over documents that should have been provided to Defendants when initially requested, the Court is permitted to award attorneys' fees under Rule 37(a)(5)(A). Moreover, Plaintiff's business was operated by one principal, Mr. Chaite, and he had two lawyers, who he admits advised him to retain all relevant business records. Chaite Decl. ¶ 24. Plaintiff has offered no excuse, other than that he incorrectly determined that the evidence was irrelevant and did not understand his AOL account functions, for why the evidence was not preserved when Plaintiff operated in a small business setting under the watch of two legal advisors. Even if Mr. Chaite believed the evidence was irrelevant, he should have asked his attorneys before destroying it. His attorneys, by the same token, should have advised Mr. Chaite not to destroy any records relating to his business, even if they were "voluminous." Plaintiff will be required to pay the attorneys' fees incurred by Defendant in making this motion because of Plaintiff's negligent conduct.

## III. Conclusion

For the foregoing reasons, Defendants' spoliation motion is denied except to the extent

that Defendants are awarded reasonable attorneys' fees and costs incurred in connection with the motion. Counsel shall confer to determine if they can come to an agreement as to the amount of attorneys' fees to be paid. If they cannot come to an agreement, Defendants shall submit affidavit(s) and supporting time records on or before March 11, 2016. Plaintiff may submit an opposition by March 17, 2016. No reply permitted.

Dated: Brooklyn, New York
February 26, 2016

*Vera M. Scanlon*
VERA M. SCANLON
United States Magistrate Judge